IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KIMRA LYN RAY,**

      **Plaintiff,**

v.                                        No. CIV-15-0602 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 17)*, filed March 28, 2016 (hereinafter "motion"). On June 2, 2016, Defendant filed a response to Plaintiff's motion *(Doc. 18)* and, on July 21, 2016, Plaintiff filed a reply *(Doc. 20)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *7*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 11*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED**.

## I.   Procedural History

On February 22, 2011, Plaintiff protectively filed[1] applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on January 3, 2010.  [*Doc. 11-9* at 3 and 5, respectively].  Plaintiff claimed her disability was due to Bipolar Disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), depression, malnutrition, and anemia.  [*Doc. 11-10 at 18*].  Each application was denied at the initial level on January 9, 2012 (*Doc. 11-5* at 2, 3), and at the reconsideration level on January 2, 2013 (*id.* at 4, 5).  Pursuant to Plaintiff's request (*Doc. 11-6* at 21-22), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on January 27, 2015 (*Doc. 11-4* at 2-36). Plaintiff appeared at the hearing, represented by attorney Michael D. Armstrong, and testified (*id.* at 8-30).  Vocational Expert Mary DianeWeber (hereinafter "VE") also testified (*id.* at 30-34).

On February 26, 2015, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled from January 3, 2010 through the date of the decision.  [*Doc. 11-3* at 23].  Plaintiff requested that the Appeals Council review the ALJ's decision.  *Id.* at 6.  On May 11, 2015, the Appeals Council denied Plaintiff's request for review, on the ground that they had "found no reason under our rules to review the [ALJ]'s decision."  *Id.* at 2-4.  This decision was the final decision of the Commissioner.  On July 10, 2015, Plaintiff filed her complaint in this case.  [*Doc. 1*].

---

[1]  *See* [*Doc. 11-10* at 14] for protective filing date.

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 20, 1954.  [*Doc. 11-9* at 2].  She has previously worked as a cashier, a sales clerk, and a nursery school attendant/child daycare worker.  [*Doc. 11-3* at 21]. Plaintiff claims to be disabled due to, among other things, attention deficit hyperactivity disorder, depression, bipolar disorder, anxiety, and learning disabilities.  [*Doc. 11-10* at 59; *Doc. 11-11* at 22].  She has not worked since 2010.  [*Doc. 11-10* at 10].

Plaintiff's medical records include:  treatment records for the period from October 30, 2009 to September 10, 2010 from H. Tyler Taylor, M.D. and Care First, LLC (*Doc. 11-5* at 6-26); treatment records for the period from August 20, 20012 to December 3, 2014 from Steven Koch, LPCC and Los Alamos Family Council, Inc. (*Doc. 11-34* at 4 through *Doc. 11-35* at 79); medical assessment of mental abilities dated April 23, 2014 from Steven Koch, LPCC (*Doc. 11-33* at 41-43); medical assessment of mental abilities and addendum dated January 26, 2015 from Steven Koch, LPCC (*Doc. 11-36* at 56-61); case analysis dated December 9, 2011 from Charles F. Bridges, Ph.D., Disability Determination Services (*Doc. 11-18* at 16); psychiatric review technique dated January 5, 2012 from Carol Mohney, Ph.D., Disability Determination Services (*id*. at 17-27); and Mental RFC dated December 28, 2012 from Scott R. Walker, M.D., Disability Determination Services (*Doc. 11-5* at 12-17).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date of January 3, 2010. [*Doc. 11-3* at 12].  At step two, the ALJ found that Plaintiff has severe, medically determinable, impairments of "depression and substance addiction disorders (alcohol and drugs)."  *Id.*  At the

third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* In so finding, the ALJ considered Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). *Id*. at 13. Based on her findings that Plaintiff has only mild restriction of her activities of daily living; moderate difficulties with both social functioning and concentration, persistence or pace; and has had no extended periods of decompensation, the ALJ concluded that the paragraph B criteria of Listings 12.04 and 12.09 were not satisfied, and that the evidence failed to establish the presence of paragraph C criteria for those listings, as well. *Id*. at 13-14.

Before step four, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: "Due to a combination of mental impairments [Plaintiff] is limited to simple work-related decisions with few workplace changes. She can have no interaction with the general public and only occasional and superficial interactions with co-workers." *Id*. at 15. In support of that RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*. at 16. At step four, based on the VE's testimony, the ALJ found that Plaintiff "is unable to perform any past relevant work." *Id*. at 21.

At the fifth and final step, the ALJ noted that Plaintiff was born on November 20, 1954 and was 55 years old on the claimed disability onset date, which is defined as an individual of

advanced age.[2]  *Id*.  The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English, and concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills."  *Id*.  The ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  *Id.* at 22.  The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with the [Plaintiff]'s age, education, work experience, and [RFC]," and the VE testified that such an individual "would be able to perform the requirements of representative occupations," including, garment folder (laundry), which is light, unskilled work; housekeeper (motel/hotel), which is also light, unskilled work; and cleaner (hospital), which is medium, unskilled work.  *Id*.  From the VE's testimony, the ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.* at 23.  Therefore, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, from January 3, 2010 to the date of the decision.  *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion:  (1) the ALJ failed to provide adequate reasons for rejecting the opinions of Steven Koch, LPCC and Sharon Andreatta, LPN (*Doc. 17* at 16-20); (2) the ALJ breached her duty to develop the record with respect to Plaintiff's

---

[2] *See* 20 CFR 404.1563 and 416.963 (defining "advanced age" as "age 55 or older").

cognitive impairments (*id*. at 20-24); and (3) the ALJ failed to explain why she did not incorporate all of moderate mental limitations found by Scott R. Walker, M.D. into Plaintiff's RFC (*id*. at 24-26).  Defendant responds that:  the ALJ's decision is supported by substantial evidence (*Doc. 18* at 3-4); (2) the ALJ appropriately explained the weight she gave to Mr. Koch's and Ms. Andreatta's opinions (*id*. at 5-8); and (3) the ALJ appropriately relied on Dr. Walker's specific RFC rather than his individual functionality assessments (*id*. at 8-9).   In her reply, Plaintiff asserts that the Defendant's responses were merely "post hoc rationalizations," and reiterates her previous arguments.   [*Doc. 20*].

### A.  The ALJ's Consideration of the Steve Koch, LPCC Opinions

Plaintiff was assessed by therapist Steven Koch, LPCC on August 8, 2012 while she was hospitalized following an attempted suicide by drug overdose.  [*Doc. 11-34* at 89 through *Doc. 11-35* at 10].   Thereafter, Plaintiff attended seventy individual therapy sessions with Mr. Koch from August 20, 2012 to November 5, 2014.   [*Doc. 11-34* at 4-88; *Doc. 11-35* at 24-56].   Mr. Koch is a Licensed Professional Clinical Counselor, which is not considered to be "an acceptable medical source" under 20 C.F.R. §§ 404.1513(a) and 416.913(a), but is instead an "other medical source," under 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1).   Nonetheless, opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects."  Soc. Sec. Rep. 06–03p at *3, 2006 WL 2329939. Thus, the same 20 C.F.R. §§ 404.1527(d) and 416.927(d) factors that are used to weigh opinions from acceptable medical sources "apply equally" to opinions of not-acceptable medical sources.

*Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).[3]  Based on proper consideration of those factors, it is possible for an opinion from a not-acceptable source to outweigh the opinion of an acceptable source, including that of an acceptable treating source.  Soc. Sec. Rep. 06–03p at *5. "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  *Id*. (internal quotation marks omitted).

Mr. Koch provided two opinions regarding Plaintiff's ability to perform work-related mental activities.  The first assessment, dated April 23, 2014 (hereinafter "2014 Opinion"), found that Plaintiff had "marked" limitations in all three "understanding and memory" functions, seven out of eight "sustained concentration and persistence" functions, two out of five "social interaction" functions, and three out of four "adaptation" functions.  [*Doc. 11-33* at 41-42].  Of the five functions not rated as markedly impaired, Mr. Koch assessed Plaintiff with three "moderate" limitations, and two "slight" limitations.  *Id*.  In addition, Mr. Koch found that Plaintiff could not adapt to and, therefore, should avoid all but one of ten "temperament characteristics," that are required by jobs.  *Id*. at 43.  Mr. Koch's second assessment, dated January 26, 2015 (hereinafter "2015 Opinion"), was nearly identical to the 2014 Opinion, but

---

[3] Those factors are:  "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Bainbridge v. Colvin*, 618 F. App'x 384, 389-90 (10th Cir. July 7, 2015) (unpublished) (citation omitted).

9

included narrative statements after each of the four function categories.[4]  [*Doc. 11-36* at 56-61]. With respect to "understanding and memory," Mr. Koch stated that Plaintiff "has very poor memory and great difficulty following instructions.  She relies heavily on others to complete tasks, and forms, and for travel."  *Id*. at 56.  He further noted, regarding "sustained concentration and persistence," that Plaintiff "has difficulty concentrating for any period of time."  *Id*.  As for her "social interaction," Mr. Koch noted that Plaintiff "has very poor social skills due to anxiety disorder and depressive disorder."  *Id*. at 57.  Finally, Mr. Koch stated with respect to Plaintiff's "adaptation" abilities, that she "has great difficulty with change.  She does not travel to unfamiliar places.  She does not take public transportation[.]  She experiences significant anxiety whenever traveling.  She cannot act[, realize][5] goals or make plans independently of others."  *Id*. Regarding "any additional significant mental limitations," Mr. Koch stated that Plaintiff's "serious mental illnesses of Bipolar I and PTSD place significant limitations on all aspects of her life."  *Id*. Mr. Koch then provided assessments of Plaintiff's Bipolar disorder under Listing 12.04 (Affective Disorders) (*id*. at 58), and her PTSD under Listing 12.06 (Anxiety-Related Disorders) (*id*. at 59), in which he concluded that Plaintiff met the requirements for both Listings.

In her consideration of Mr. Koch's 2014 Opinion, the ALJ found that he "failed to list objective findings to support his opinion," and that "there are no supporting treatment records from

---

[4] The 2015 Opinion includes an "Addendum" that indicates both that Plaintiff's inability to function in a work setting is caused solely by her mental impairments, as opposed to substance abuse, and that Mr. Koch's opinion of Plaintiff's use of alcohol or other substances was based on her self-reports from November 5, 2014 or earlier.  *See* [*Doc. 11-36* at 61].  The only other difference between Mr. Koch's two opinions was that he increased Plaintiff's severity ratings on two functions (one each in the categories "social interaction" and "adaptation") from "slight" in the 2014 Opinion, to "moderate" in the 2015 Opinion.  *Compare* [*Doc. 11-33* at 42 with *Doc. 11-36* at 57].

[5] This portion of Mr. Koch's final note is essentially illegible but, in context, appears to be "realize."

10

Mr. Koch," concluding, on that basis, that "his opinion cannot be given more than limited weight." [*Doc. 11-3* at 20]. Although Mr. Koch's 2015 Opinion is briefly discussed in the same paragraph, the ALJ did not specifically assign a weight to it. Plaintiff asserts that the ALJ "improperly rejected" Mr. Koch's opinions. [*Doc. 17* at 17]. The Court agrees.

The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. Soc. Sec. Rep. 96-8p at *5, 1996 WL 374184. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id*. Because the ALJ must consider the whole record, she is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted). When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions. *Hamlin*, 365 F.3d at 1215 (citation omitted).

Here, the administrative record contains no opinions from any "acceptable" treating sources. The only treating source opinions in the record are from Mr. Koch and Sharon

Andreatta, LPN, both of whom are "not acceptable" medical sources. Treatment records from Plaintiff's psychiatrists, Anjali Yeolekar-dasari, M.D. and Deanna Louise Armstrong, M.D., include diagnoses, but no "functionality" opinions. The only other mental opinion evidence is from Disability Determination Services (DDS) non-examining consultants Carol Mohney, Ph.D., at the initial review level, and Scott R. Walker, M.D., at the reconsideration level. The ALJ specifically named only Dr. Walker in her decision, but nonetheless gave "great weight to" the opinions of all of the non-examining consultants, apparently based solely on their "expert[ise] in the evaluation of the medical issues in disability claims under the Social Security Act," as no other reason for the weight assigned to them was given. [*Doc. 11-3* at 21]. Not only does this statement constitute a failure to "explain the weight given," it ignores the fact that the DDS experts did not have either Mr. Koch's therapy records or his 2014 and 2015 Opinions when they evaluated Plaintiff's functionality in 2012. *See* [*Doc. 11-18* at 17 (January 5, 2012 DDS assessment); *Doc. 11-5* at 16 (December 28, 2012 DDS assessment)]. *See also* [*Doc. 11-5* at 8-11, 20-23 (listing evidence of record available at reconsideration)].

The ALJ's reasons for essentially rejecting[6] Mr. Koch's opinions are both improperly superficial and inaccurate. First, the ALJ indicated that Mr. Koch "failed to list objective findings to support his opinion." [*Doc. 11-3* at 20]. As Plaintiff points out in her motion, applicable regulations do not require medical sources to "list objective findings." [*Doc. 17* at 17]. Thus,

---

[6] An ALJ's assignment of "little weight" to a medical opinion may be interpreted as "effectively rejecting" it. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ's statement that Mr. Koch's opinion could not be given more than "limited weight" is similarly dismissive.

the ALJ cited no source that supports disregarding an opinion on that basis.[7]  Moreover, mental assessments typically are provided on a standardized Mental RFC form (SSA-4734-F4-SUP), which does not itself state any such requirement, nor do the instructions provided for that document in the Administration's own Program Operations Manual System.  *See* POMS DI-24510.060, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (site last visited November 2, 2016).  Finally, Mr. Koch's records include several "objective" test results for Plaintiff, which the ALJ apparently did not consider.  *See* [*Doc. 11-35* at 11-22 (including two PHQ-9 depression screens, three PCL-C screens for PTSD, two Beck Depression Inventories (BDI); and three Burns Anxiety Inventories (BAI))].

The ALJ's second basis for discounting Mr. Koch's opinion, that there were "no supporting treatment records from Mr. Koch," is even less supportable.  In addition to his 2014 (*Doc. 11-33* at 41-42) and 2015 (*Doc. 11-36* at 56-61) Opinions, his hospital intake assessment of Plaintiff in August 2012 (*Doc. 11-34* at 89 through *Doc. 11-35* at 10), and the objective tests listed above (*Doc. 11-35* at 11-22), Mr. Koch provided progress notes and assessments for seventy individual therapy sessions that took place over more than two years (*Doc. 11-34* at 4-88; *Doc. 11-35* at 24-56), many of which the ALJ herself addressed (*Doc. 11-3* at 18-19).  If the ALJ believed that those voluminous records did not support Mr. Koch's 2014 and 2015 Opinions, she should have stated that, along with a specific explanation of how they were non-supportive.  ALJ's are expected to explain the weight given to opinions from "other medical sources," and to at

---

[7] Indeed, the Tenth Circuit has expressly disagreed that therapist opinions must be based on "objective tests," stating that: "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  A psychological opinion need not be based on solely objective 'tests;' those findings 'may rest either on observed signs and symptoms or on psychological tests.'"  *Thomas v. Barnhart*, 147 F. App'x 755, 761 (10th Cir. September 2, 2005) (unpublished) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004)).

least "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow [their] reasoning, when such opinions may have an effect on the outcome of the case." Soc. Sec. Rep. 06–03p at *6.

Mr. Koch had, by far, the longest and most in-depth relationship with Plaintiff of any of the medical sources in this case. He acted as a treating therapist for over two years, and provided detailed records that included both "objective" and "subjective" assessments. His and Ms. Andreatta's opinions were the only medical source opinions provided by someone who had actually met and conversed with Plaintiff. The ALJ simply did not discuss either these facts or any of the other factors for appropriate weighing of medical opinions, and this Court is unable to follow her reasoning with regard to the weights she assigned. Therefore, this case must be remanded for additional consideration of the medical record.

### B    Plaintiff's Additional Claims

Because this case must be remanded for reconsideration of the medical evidence of record, the Court need not specifically address Plaintiff's arguments that the ALJ failed to develop the administrative record with respect to Plaintiff's alleged "cognitive and developmental learning impairments," that she improperly rejected the opinion of Sharon Andreatta, LNP, and that she failed to incorporate all of Dr. Scott Walker's assessed functional limitations without explanation. This Court expects that the opinions of Dr. Walker and Nurse Practitioner Andreatta will be reassessed on remand in the course of reconsideration of *all* of the medical evidence, as is required by Soc. Sec. Rep. 96-8p at *7 ("RFC assessment must always consider and address medical source opinions").

However, it is significant with respect to Plaintiff's record development claim, that Plaintiff requested a medical consultative evaluation of her intellectual functioning both at the January 27, 2015 hearing (*Doc. 11-4* at 34-35) and by letters to the ALJ dated January 28, 2015 (*Doc. 11-11* at 22) and February 23, 2015 (*id*. at 24).  Additionally, more than three years prior to the hearing, DDS psychologist Bridges specifically requested that additional evidence be obtained regarding Plaintiff's cognitive functioning, stating:

> This [Plaintiff] alleges she is a slow learner and has poor academic skills.  She reports a 12th grade education with no special education.  The 3373 indicates a short attention span, poor concentration, and difficulty following instructions.  The job history is consistent with limited intellectual abilities.  The most recent mental [medical evidence of record] is from 03/26/2011.  The [Plaintiff] alleged a recent hypo-manic episode at that time.  *In order to assess the [Plaintiff]'s mental allegations, please obtain additional mental status evidence.  If the [Plaintiff] affirms impaired cognitive functioning, obtain a[ Mental Status Examination] with a WAIS-IV to determine the [Plaintiff]'s level of intellectual functioning*.

*Doc. 11-18* at 16 (emphasis added).  Plaintiff also testified about her difficulties in school, her problems understanding and concentrating at her previous jobs, and her inability to memorize and do math.  [*Doc. 11-4* at 13-14, 23-25].  Nonetheless, the ALJ did not specifically address Plaintiff's claimed intellectual difficulties in her decision,[8] other than to acknowledge that

---

[8] In fact, the ALJ determined Plaintiff's severe impairments at step two of the SEP to be only "depression and substance addiction disorders" (*Doc. 11-3* at 12), without even discussing any of Plaintiff's other alleged and/or diagnosed impairments.  The record reveals that Plaintiff was also diagnosed with, among other things, bipolar disorder, attention deficit disorder, and post-traumatic stress disorder (PTSD) by her treating physicians: Lawrence W. Lazarus, M.D. (bipolar disorder) (*Doc. 11-12* at 7), H. Tyler Taylor, M.D (bipolar and attention deficit disorders) (*Doc. 11-15* at 12), Anjali Yeolekar-dasari, M.D. (bipolar and attention deficit disorders) (*Doc. 11-17* at 12), and Diana Louise Armstrong, M.D. (bipolar and attention deficit hyperactivity disorders) (*Doc. 11-18* at 8).  During Plaintiff's hospitalization for a suicide attempt in August 2012, a notation in her hospital record indicates, as part of a psychological consult, that previous doctors had "suggested possible PTSD or schizophrenic disorder." [*Doc. 11-22* at 27].  Mr. Koch also screened Plaintiff for PTSD three times in 2013, using a standardized screening test called the PTSD CheckList – Civilian Version ("PCL-C"). [*Doc. 11-35* at 12, 13, 16].  Plaintiff scored 74 on her initial test on March 14, 2013; 39 on June 25, 2013; and 57 on September 18, 2013, which average out to a score of slightly less than 57.  *Id*.  Using the test's most restrictive "cut-point score," which is recommended for use by

Plaintiff had made such claims at the reconsideration level (*Doc. 11-3* at 21), despite the "duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Wall v. Astrue*, 561 F.3d 1048, 1062 63 (10th Cir. 2009).   An ALJ's duty to develop the record arises when the claimant raises the issue to be developed and includes evidence in the record "to suggest a reasonable possibility that a severe impairment exists."  *Id*. at 1063 (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).   This standard is not high.  *See, e.g., Davison v. Colvin*, 596 F. App'x 675, 679 (10th Cir. December 22, 214) (unpublished) (sufficient evidence is "the presence of *some* objective evidence in the record *suggesting* the existence of a condition which *could* have a material impact on the disability decision") (emphasis added; and citation omitted).   On remand, the fact finder should consider and address Plaintiff's claimed intellectual impairments in light of *Wall, Davison,* and 20 C.F.R. §§404.1520b and416.920b.

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded for further proceedings, including proper consideration of all of the medical evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 17*) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

---

"civilian specialty mental health clinics," a diagnosis of PTSD is assessed based on a score of at least 45-50.  *See* "Using the PTSD Checklist for DSM-IV" (PDF), available at http://www.ptsd.va.gov/professional/assessment/overview/index.asp (site last visited September 21, 2016).   Despite all of this record evidence, the ALJ did not even discuss bipolar disorder, ADD, or PTSD at step two, and made only one superficial reference to the diagnoses of Drs. Yeolekar-dasari and Armstrong in her RFC narrative.   [*Doc. 11-*3 at 16].

**IT IS SO ORDERED.**

*Lourdes A. Martínez*

**LOURDES A. MARTÍNEZ
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent**